UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **CHRISTOPHER B. MONTGOMERY** | **CIVIL ACTION** |
| VERSUS | NO. 20-756 |
| **ANNETTE LOGSDON, R.N., ET AL.** | SECTION: "R"(1) |

**PARTIAL REPORT AND RECOMMENDATION**

Plaintiff, Christopher B. Montgomery, a paraplegic inmate, filed this civil action alleging that his rights were violated while he was incarcerated at the Plaquemines Parish Detention Center.[1]  He asserts claims pursuant 42 U.S.C. § 1983, the Americans with Disabilities Act ("ADA"), and Section 504 of the Rehabilitation Act ("Rehabilitation Act").  This Partial Report and Recommendation addresses pending motions filed by Annette Logsdon ("Logsdon") and her employer, CorrectHealth Plaquemines, LLC ("CorrectHealth").[2]

Logsdon filed a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.[3]  In that motion, she argued, *inter alia*, that plaintiff's medical records show that she was not deliberately indifferent to his serious medical needs.  In support of that argument, she attached those medical records to her motion.  Because the Court found that the proffered medical records, which exceeded a thousand pages, were comprehensive and would likely facilitate disposition of the claims against Logsdon, the Court opted to allow and consider them.[4]  Therefore,

---

[1] Plaintiff is no longer incarcerated at that facility; he is currently incarcerated at the Medical Center for Federal Prisons in Springfield, Missouri.
[2] The remaining defendants have neither joined in these motions nor filed separate motions of their own.  Therefore, the claims against the remaining defendants are not addressed herein.
[3] Rec. Doc. 43.
[4] One leading treatise observes:

pursuant to Rule 12(d), the Court converted Logsdon's Rule 12(b)(6) motion to dismiss to a Rule 56 motion for summary judgment and gave the required notice of the conversion to the parties.[5] See Young v. McCain, 760 F. App'x 251, 255-56 (5th Cir. 2019) (holding that where district court relied, "at least in part," on a prisoner's medical records in considering whether the defendants acted with deliberate indifference, "the district court effectively converted the defendants' Rule 12(b)(6) motion into a summary judgment motion, thereby triggering the requisite procedural safeguards of notice and a reasonable time to respond" under Rule 12(d)); Zantiz v. Seal, 602 F. App'x 154, 160-161 (5th Cir. 2015) (holding that a prisoner's medical records could not be considered with respect to a motion to dismiss his claim alleging constitutionally deficient medical care; noting that although the defendant "cites cases where we have considered medical records in reviewing either the dismissal of a prisoner's in forma pauperis lawsuit as frivolous or the denial of a motion for summary judgment based on qualified immunity, … [he] points to no cases where we have considered medical records at the motion to dismiss stage"; further noting that "[e]vidence that is outside the pleadings cannot be considered for a motion to dismiss" unless the motion is converted to one for summary judgment); 5C Arthur R. Miller, Mary K. Kane & A. Benjamin

---

> As the language of [Rule 12(d)] suggests, federal courts have complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it. Numerous cases have recognized this authority. This discretion generally will be exercised on the basis of the district court's determination of whether or not the proffered material, and the resulting conversion from the Rule 12(b)(6) to the Rule 56 procedure, is likely to facilitate the disposition of the action. When the extra-pleading material is comprehensive and will enable a rational determination of a summary judgment motion in accordance with the standard set forth in Rule 56, the district court is likely to accept it; when it is scanty, incomplete, or inconclusive, the district court probably will reject it.

5C Arthur R. Miller, Mary K. Kane & A. Benjamin Spencer, Fed. Prac. & Proc. Civ. § 1366 (3d ed.) (footnotes omitted).
[5] Rec. Doc. 44.

Spencer, Fed. Prac. & Proc. Civ. § 1366 (3d ed.) ("Once the district court decides to accept matters outside of the pleadings, the presence of the word 'must' [formerly 'shall'] in subdivision (d) of Rule 12 indicates that the judge must convert the motion to dismiss into one for summary judgment and that is what has been done in a vast array of cases, especially when the district court actually considers the contents of this material in deciding the motion." (footnote omitted)).

However, before the merits of that motion were considered, the Court held a status conference in this case. As a result of what transpired at that conference, the Court held that plaintiff would be permitted to file a motion for leave to file an amended and superseding complaint. The Court then also held that all pending motions would be held in abeyance until the Court ruled on the anticipated motion for leave to file an amended and superseding complaint.[6]

Plaintiff then in fact filed a motion for leave to file an amended and superseding complaint,[7] which the Court granted.[8] In light of that Amended and Superseding Complaint,[9] Logsdon and CorrectHealth promptly filed a **new** Rule 12(b)(6) motion.[10] Because that motion likewise relied on plaintiff's medical records, the Court, once again, promptly converted it to a Rule 56 motion for summary judgment, and gave the required notice to the parties.[11]

Plaintiff's Amended and Superseding Complaint is now the operative complaint in this matter.[12] In light of that filing, as well as Logsdon and CorrectHealth's comprehensive new

---

[6] Rec. Doc. 87.
[7] Rec. Doc. 88.
[8] Rec. Doc. 91.
[9] Rec. Doc. 92.
[10] Rec. Doc. 95.
[11] Rec. Doc. 96.
[12] "An amended complaint supersedes the original complaint and renders it of no legal effect unless the amended complaint specifically refers to and adopts by reference the earlier pleadings." MacFarland v. Walker, No. 99-30705, 2000 WL 633450, at *1 (5th Cir. Apr. 27, 2000). Here, the Amended and Superseding Complaint does not adopt by reference any other pleadings. Moreover, in allowing plaintiff to file a motion for leave to file an amended and superseding complaint, this Court expressly held:

motion, Logsdon's original motion is now effectively moot. Therefore, the Court need address only the new motion.

## I. Summary Judgment Standards

As noted, the new motion has been converted to a Rule 56 motion for summary judgment. In reviewing a motion for summary judgment, the Court may grant the motion when no genuine issue of material fact exists and the mover is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). There is no "genuine issue" when the record taken as a whole could not lead a rational trier of fact to find for the nonmovant. Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

"Procedurally, the party moving for summary judgment bears the initial burden of informing the district court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact." Taita Chemical Co., Ltd. v. Westlake Styrene Corp., 246 F.3d 377, 385 (5th Cir. 2001) (quotation marks and brackets omitted). The party opposing summary judgment must then "go beyond the pleadings and by [his] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986) (internal quotation marks omitted); accord Provident Life and

---

Plaintiff must attach to that motion the proposed amended and superseding complaint, and the proposed filing **must** include the **name** of each individual or entity plaintiff seeks to sue and **a short and plain statement of each claim** plaintiff wishes to assert against each such individual or entity. See Fed. R. Civ. P. Rule 8(a). If plaintiff's motion is granted, then the amended and superseding complaint will replace all prior versions of his complaint; therefore, the proposed amended or superseding complaint must incorporate **all claims** plaintiff intends to pursue in this matter. **Any claims which appear in a prior version of the complaint but which are omitted from the amended and superseding complaint will be deemed abandoned.**

Rec. Doc. 87, p. 1.

Accident Ins. Co. v. Goel, 274 F.3d 984, 991 (5th Cir. 2001). The Court has no duty to search the record for evidence to support a party's opposition to summary judgment; rather, "[t]he party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which the evidence supports his or her claim." Ragas v. Tennessee Gas Pipeline Co., 136 F.3d 455, 458 (5th Cir. 1998). Conclusory statements, speculation, and unsubstantiated assertions are not competent summary judgment evidence and will not suffice to defeat a properly supported motion for summary judgment. Id.; Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1429 (5th Cir. 1996).

## II. Defendant CorrectHealth

### A. Allegations Against CorrectHealth

Plaintiff makes the following allegations against CorrectHealth in his Amended and Superseding Complaint:

> 29.) Defendant, CorrectHealth Plaquemines, failed and refused to have plaintiff seen by a doctor or specialist for his extreme constipation and bleeding out the rectum constantly causing unbearable stomach pain, even though plaintiff has been complaining since 2019 of this problem.
>
> 30.) Defendant, CorrectHealth Plaquemines, refused and failed to follow wound care specialist orders, or recommendations and place plaintiff on wound VAC and protein supplements (Ensure) to help plaintiff's wound heal.
>
> 31.) Defendant, CorrectHealth Plaquemines, denied plaintiff of his prescribed medication multiple times by plaintiff moving too slow getting out of bed.
>
> 32.) Defendant, CorrectHealth Plaquemines, failed and denied plaintiff of wound care.
>
> 33.) Defendant, CorrectHealth Plaquemines, denied Mr. Montgomery of his Constitutional Right to adequate medical care.

34.)   Defendant, CorrectHealth Plaquemines, failed to take the appropriate action and necessary measures to protect and preserve plaintiff's health and safety.[13]

## B.  Claims Against CorrectHealth

### 1.  § 1983 Claims

A private company, such as CorrectHealth, which has been hired to run the medical department at a parish jail is treated as a municipal or local governmental entity for the purposes of § 1983, and, therefore, claims against such a company are analyzed as Monell claims.  In a lawsuit in which a similar corporation, i.e. CorrectHealth Jefferson, LLC, had been named as a defendant, United States District Judge Mary Ann Vial Lemmon recently explained:

> "The test to determine liability for a private prison-management corporation under § 1983 is more or less identical to the test employed to determine municipal or local government liability." Alfred v. Corr. Corp., 2009 WL 789649, at *2, n.1 (W.D. La. Mar. 24, 2009) (citing Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978) (other citations omitted)).  Thus, to establish CorrectHealth's liability under § 1983, [the plaintiff] must prove the existence of a policymaker, an official policy, and a violation of the plaintiff's constitutional rights for which the moving force was the policy or custom.  See Duvall v. Dall. Cnty., Tex., 631 F.3d 203, 209 (5th Cir. 2011); Piotrowski v. City of Hous., 237 F.3d 567, 578 (5th Cir. 2001).  The requirement of a policymaker, an official policy, and the 'moving force' of the policy, serve to distinguish individual violations by government healthcare contractor employees from those that can be fairly considered actions of the government health contractor itself.  Piotrowski, 237 F.3d at 578.

Woodward v. Lopinto, Civ. Action No. 18-4236, 2021 WL 1969446, at *5 (E.D. La. May 17, 2021); accord Carter v. Gautreaux, Civ. Action No. 19-105, 2020 WL 6251186, at *2 (M.D. La. Oct. 22, 2020) (treating a claim against CorrectHealth East Baton Rouge, LLC, as a Monell claim); Richardson Plaquemines Parish Detention Center, Civ. Action No. 19-10926, 2020 WL 5217017,

---

[13] Rec. Doc. 92, pp. 6-7.

at *5 (E.D. La. Aug. 12, 2020) (treating a claim against CorrectHealth Plaquemines, LLC, as a Monell claim), adopted, 2020 WL 5209302 (E.D. La. Sept. 1, 2020).

Regarding Monell claims, the United States Fifth Circuit Court of Appeals has explained:

> In order to hold a municipality or a local government unit liable under Section 1983 for the misconduct of one of its employees, **a plaintiff must initially allege that an official policy or custom was a cause in fact of the deprivation of rights inflicted**. To satisfy the cause in fact requirement, **a plaintiff must allege that the custom or policy served as a moving force behind the constitutional violation at issue or that [his] injuries resulted from the execution of an official policy or custom**. The description of a policy or custom and its relationship to the underlying constitutional violation, moreover, cannot be conclusory; it must contain specific facts.

Spiller v. City of Texas City, Police Department, 130 F.3d 162, 167 (5th Cir. 1997) (emphasis added; citations, quotation marks, and brackets omitted). Further, "[a] plaintiff may not infer a policy merely because harm resulted from some interaction with a governmental entity." Colle v. Brazos County, 981 F.2d 237, 245 (5th Cir. 1993); see also Wetzel v. Penzato, Civ. Action No. 09-7211, 2009 WL 5125465, at *3 (E.D. La. Dec. 23, 2009). Rather, he must **identify** the policy or custom which allegedly caused the deprivation of his constitutional rights. See, e.g., Murray v. Town of Mansura, 76 F. App'x 547, 549 (5th Cir. 2003); Treece v. Louisiana, 74 F. App'x 315, 316 (5th Cir. 2003); Wetzel, 2009 WL 5125465, at *3. In the instant case, plaintiff does not allege that his constitutional rights were violated as a result of a policy or custom, much less identify such a policy or custom. Therefore, he has failed to state a proper Monell claim against CorrectHealth. Accordingly, the instant motion should be granted with respect to the § 1983 claims against CorrectHealth, and those claims should be dismissed.

## 2. ADA/Rehabilitation Act Claims

Plaintiff's complaint also names CorrectHealth as a defendant with respect to his ADA and Rehabilitation Act claims;[14] however, the instant motion discusses only his § 1983 claims. Because the motion does not address the ADA and Rehabilitation Act Claims, **no recommendations regarding those claims are made herein.**

### III.  Defendant Logsdon

### A. Allegations Against Logsdon

Plaintiff makes the following allegations against Logsdon, whom he identifies as "an R.N. for CorrectHealth Plaquemines, LLC,"[15] in his Amended and Superseding Complaint:

10.) Defendant, Annette Logsdon, refused plaintiff of his prescribed medication.

11.) Defendant, Annette Logsdon, failed to obtain plaintiff a wound VAC prescribed and recommended by wound care specialist at UMC.  Also approved by United States Marshal Service.

12.) Defendant, Annette Logsdon, R.N., failed and refused to order protein supplements (Ensure) prescribed and recommended by wound care specialist at UMC to help plaintiff's wound heal.

13.) Defendant, Annette Logsdon, R.N., routinely failed to get plaintiff to his wound care appointments.

14.) Defendant, Annette Logdson, R.N., failed to get plaintiff seen by a doctor or specialist concerning his extreme constipation and bleeding out of the rectum constantly causing extreme pain and discomfort going on since 2019.

15.) Defendant Annette Logsdon, R.N., alters medical records of the plaintiff's.

16.) Defendant, Annette Logsdon, R.N., refused to do plaintiff's wound care.

17.) Defendant, Annette Logsdon, R.N., deprived Mr. Montgomery of his constitutional right to adequate medical care.

---

[14] See id. at pp. 12-13.
[15] Id. at p. 3.

18.) Defendant, Annette Logsdon, failed to take the appropriate action and necessary measures to protect and preserve plaintiff's health and safety.

19.) Defendant, Annette Logsdon, failed to carry out wound care specialist orders/or recommendations.

20.) Defendant, Annette Logsdon, refused to fix broken brakes on plaintiff's wheelchair.[16]

### B. Claims Against Logsdon[17]

#### 1. § 1983 Claims

Pursuant to 42 U.S.C. § 1983, plaintiff contends that Logsdon violated his federal constitutional right to medical care under the Eighth and Fourteenth Amendments. "A prison official can be found liable under the Eighth and Fourteenth Amendments for the denial of adequate medical care if [she] is aware of and disregards a substantial risk of serious harm to the convicted prisoner, Farmer v. Brennan, 511 U.S. 825, 834, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994), or pretrial detainee, Hare v. City of Corinth, Miss., 74 F.3d 633, 639, 650 (5th Cir. 1996) (en banc)." Rhine v. Ellison, 537 F. App'x 410, 411 (5th Cir. 2013). Although the two amendments apply to different stages of an inmate's incarceration,[18] under both, the applicable

---

[16] Id. at pp. 4-5.
[17] Plaintiff indicates that he is suing Logsdon in both her individual and official capacities. Id. at p. 3. However, the claims against Logsdon in her official capacity are actually claims against her employer, CorrectHealth. See Carter v. Gautreaux, Civ. Action No. 19-105, 2021 WL 2785332, at *5-6 (M.D. La. July 2, 2021); Matthews v. Tangipahoa Police Jury, Civ. Action No. 16-2938, 2019 WL 1098734, at *5 (E.D. La. Mar. 8, 2019); Zavala v. City of Baton Rouge/Parish of East Baton Rouge, Civ. Action No. 17-656, 2018 WL 4517461, at *14 (M.D. La. Sept. 20, 2018). For the reasons explained *supra*, in order to properly allege a claim against CorrectHealth, plaintiff must that allege that his constitutional rights were violated as a result of a policy or custom and identify that policy or custom. He has not done so. Therefore, just as the claims against CorrectHealth fail for that reason alone, so do the claims against Logsdon in her official capacity. Accordingly, in this section of the opinion, the Court addresses only the claims against Logsdon in her **individual** capacity.
[18] As the United States Fifth Circuit Court of Appeals has explained:

> Pretrial detainees and convicted prisoners … look to different constitutional provisions for their respective rights to basic needs such as medical care and safety. The constitutional rights of a convicted state prisoner spring from the Eighth Amendment's prohibition on cruel and unusual

9

test for claims involving medical care is the same. See, e.g., Cleveland v. Bell, 938 F.3d 672, 676 (5th Cir. 2019); Gibbs v. Grimmette, 254 F.3d 545, 548 (5th Cir. 2001) ("This Court has recognized that there is no significant distinction between pretrial detainees and convicted inmates concerning basic human needs such as medical care."). Specifically, both amendments prohibit "deliberate indifference" to an inmate's "serious medical needs." Cleveland, 938 F.3d at 676.

The United States Fifth Circuit Court of Appeals has held that "[a] serious medical need is one for which treatment has been recommended or for which the need is so apparent that even laymen would recognize that care is required." Gobert v. Caldwell, 463 F.3d 339, 345 n.12 (5th Cir. 2006). Plaintiff's medical records show that while he was incarcerated at the Plaquemines Parish Detention Center he suffered from numerous medical conditions, including the conditions on which his current claims are based: a decubitus ulcer and severe and prolonged constipation. Logsdon neither suggests otherwise nor disputes the seriousness of those conditions.

Logsdon does, however, vigorously argue that she was not deliberately indifferent to those conditions. As she correctly notes, "deliberate indifference is an extremely high standard." Petzold v. Rostollan, 946 F.3d 242, 248-49 (5th Cir. 2019) (quotation marks omitted). In fact, to meet that standard, an inmate must first be able to prove "**objective** exposure to a **substantial risk of serious harm**." Id. at 249 (emphasis added; quotation marks omitted). Second, he must also be able to prove that the defendant had "**subjective** knowledge" of that substantial risk. Id. (emphasis

---

punishment, see Estelle v. Gamble, 429 U.S. 97, 104, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976), and, with a relatively limited reach, from substantive due process. The constitutional rights of a pretrial detainee, on the other hand, flow from both the procedural and substantive due process guarantees of the Fourteenth Amendment. See Bell v. Wolfish, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979).

Hare, 74 F.3d at 639.

added). And third, he must be able to prove that the official, "despite [her] actual knowledge of the substantial risk, denied or delayed the prisoner's medical treatment." Id. Anything less will not suffice; for example, "[a]ctions and decisions by officials that are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference …." Alton v. Texas A&M University, 168 F.3d 196, 201 (5th Cir. 1999).

Using those legal guidelines, the Court will now separately address each of plaintiff's § 1983 claims against Logsdon.

### a. Prescription Medication

As to plaintiff's allegation that Logsdon "refused plaintiff of his prescribed medication,"[19] the medical records show otherwise. Specifically, as documented in the voluminous Medical Administration Record, numerous prescription and over-the counter medications were ordered for and administered to plaintiff, including Bisocodyl (a laxative), Ibuprofen, Levetiracetam (an anticonvulsant), Gabapentin (an anticonvulsant and nerve pain medication), Ducosate Sodium (a laxative), Lisinopril (an ACE inhibitor used to treat high blood pressure and heart conditions), Milk of Magnesia (a laxative and antacid), Fleet enemas, Lactulose (a laxative and ammonia reducer), Cyclobenzaprine HCL (a muscle relaxant), Polyethylene Glycol (a laxative), Benadryl (an antihistamine), Hydrocortisone (a steroid used to treat redness, swelling, itching, and discomfort of various skin conditions), Nitrofurantoin (an antibiotic used to treat bladder infections), Methcarbomal (a muscle relaxant), and Citrate of Magnesia (a laxative).[20] Those records likewise document that the various medications were in fact administered to plaintiff on a

---

[19] Rec. Doc. 92, p. 4.
[20] Rec. Doc. 95-3, pp. 117-331.

regular basis with few exceptions. Although plaintiff challenges some aspects of his medical records, he does not contend that the Medical Administration Record is erroneous. Moreover, the mere fact that plaintiff failed to receive his medication on occasion, such as when he failed to timely appear when the medications were being distributed,[21] is not, in and of itself, of constitutional significance. See, e.g., Stockwell v. Kanan, 442 F. App'x 911, 914 (5th Cir. 2011) ("An occasional missed dose of medication does not, without more, constitute deliberate indifference."); Elsensohn v. Jefferson Parish Community Correctional Center, Civ. Action No. 09-2759, 2009 WL 5088744, at *5 (E.D. La. Dec. 23, 2009) ("The Court next notes that plaintiff also complains that the nurses at times failed to give him his medication as prescribed. Even if that is true, it is not actionable. It is clear that occasional missed doses of medication do not rise to the level of a constitutional violation.").

### b. Wound Care

Regarding his wound care, plaintiff alleges that Logsdon "failed to obtain plaintiff a wound VAC prescribed and recommended by wound care specialist at UMC," "failed and refused to order protein supplements (Ensure) prescribed and recommended by wound care specialist at UMC to help plaintiff's wound heal," "routinely failed to get plaintiff to his wound care appointments," "refused to do plaintiff's wound care," and "failed to carry out wound care specialist orders/or recommendations." Those allegations do not state viable claims for the following reasons.

A jail's medical department is not necessarily obligated to implement all aspects of care prescribed or recommended by an outside medical provider or specialist. See, e.g., Clifford v. Doe, 303 F. App'x 174, 175 (5th Cir. 2008) ("A doctor's failure to follow the advice of another

---

[21] See id. at pp. 411-13.

doctor suggests nothing more than a difference in medical opinion. Further, the question whether additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment. Therefore, the [jail] medical staff's failure to follow [an outside doctor's] recommended treatment plan did not constitute a deliberate indifference to his serious medical needs." (citations omitted)); Stewart v. Murphy, 174 F.3d 530, 535 (5th Cir. 1999); Nelson v. Griffin, No. 5:16-CV-00049, 2018 WL 1250063, at *4 (E.D. Tex. Mar. 12, 2018) ("[T]he failure to follow a course of treatment recommended by an outside doctor does not itself show deliberate indifference."); Cooper v. Walker, No. 13-CV-3209, 2014 WL 3378664, at *2 (W.D. La. July 9, 2014), appeal dismissed, 605 F. App'x 437 (5th Cir. 2015). Therefore, the relevant inquiry with respect to Logsdon is not whether she implemented care recommended and prescribed by **the outside providers**; rather, it is whether she implemented the care that was then actually recommended and prescribed by **her superiors in the jail's medical department**.[22] Because plaintiff does not allege that Logsdon failed in that respect, his allegations as stated do not suffice to state an actionable claim against her.

As to plaintiff's allegation that Logsdon routinely failed to arrange for his wound care appointments, that allegation is refuted by the medical records. For example, the records document that she regularly arranged for his wound care appointments.[23] Therefore, that claim fails. See Banuelos v. McFarland, 41 F.3d 232, 235 (5th Cir. 1995) ("Medical records of sick calls,

---

[22] Moreover, as noted *supra*, plaintiff's subsequent allegations in the Amended and Superseding Complaint indicated that Logsdon's employer, CorrectHealth, did **not** adopt the recommendations in question. See Rec. Doc. 92, p. 6 ("Defendant, CorrectHealth Plaquemines, refused and failed to follow wound care specialist orders, or recommendations and place plaintiff on wound VAC and protein supplements (Ensure) to help plaintiff's wound heal.").

[23] Rec. Doc. 95-3, pp. 15 (June 2019), 17 (July 2019), 22-23 (September 2019), 28 (October 2019), 29 (November 2019), 31-33 (December 2019), 36-37 (February 2020), 39 (March 2020), and 49 (June 2020). See also Rec. Doc. 43-3, p. 26 (wound care done at University Medical Center in January 2020).

examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference."); see also Brauner v. Coody, 793 F.3d 493, 500 (5th Cir. 2015) ("Deliberate indifference is not established when medical records indicate that the plaintiff was afforded extensive medical care by prison officials." (quotation marks and brackets omitted)).

Lastly, to the extent that plaintiff is alleging that Logsdon refused to **personally** perform his wound care, that allegation does not state a claim. The relevant issue is not whether Logsdon was willing to perform that duty herself – it is merely whether the duty was in fact performed. Moreover, here, the actual wound care was routinely performed by the workers furnished by Egan Caregivers,[24] not the CorrectHealth staff.

### c. Constipation

As to plaintiff's allegation that Logsdon "failed to get [him] seen by a doctor or specialist concerning his extreme constipation and bleeding out of the rectum constantly causing extreme pain and discomfort going on since 2019," that claim is meritless. Again, the claim is clearly rebutted by the medical records showing that plaintiff was repeatedly evaluated by medical professionals both inside and outside the jail medical department regarding his complaints of constipation and was prescribed numerous treatments for the condition.[25] The fact that plaintiff was dissatisfied with and disagreed with his medical treatment for the constipation, especially any decisions not to conduct additional diagnostic tests and not to send him to see additional outside specialists, is of no moment. Absent exceptional circumstances, an inmate's disagreement with his medical treatment simply does not constitute deliberate indifference. Gobert v. Caldwell, 463

---

[24] See Rec. Doc. 43-6.
[25] See, e.g., Rec. Doc. 95-3; Rec. Doc. 43-4, p. 9.

F.3d 339, 346 (5th Cir. 2006). Further, "the question of whether … additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment." Estelle v. Gamble, 429 U.S. 97, 107 (1976). The same is true regarding the decision to treat an inmate in the jail medical department rather than to send him to outside medical providers or specialists. See Alfred v. Texas Department of Criminal Justice, 80 F. App'x 926, 927-28 (5th Cir. 2003); see also Fowler v. Hodge, 94 F. App'x 710, 713 (10th Cir. 2004); Morrison v. Gusman, Civ. Action No. 10-217, 2010 WL 724173, at *4 (E.D. La. Feb. 22, 2010).

### d. Alteration of Medical Records

As to plaintiff's allegation that Logsdon altered his medical records, he fails to specifically identify a single record which was allegedly altered by her. Because his allegation is wholly conclusory and unsupported by any factual allegations, it fails. See, e.g., Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) ("A pleading that offers … conclusions … will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." (citation, quotation marks, and brackets omitted)).

### e. Wheelchair Brakes

As to plaintiff's allegation that Logsdon "refused to fix broken brakes on [his] wheelchair," plaintiff has furnished no support for his implicit contention that maintenance of the facility wheelchairs fell within Logsdon's duties.[26] Nevertheless, even if the Court simply assumes for the purposes of this decision that Logsdon bore some responsibility concerning such matters, plaintiff does not allege that he was harmed as a result of the faulty brakes (or even that the faulty

---

[26] The Court notes that in an opinion addressing claim filed by another inmate at the Plaquemines Parish Detention Center concerning a faulty wheelchair, there is an indication that Egan Caregivers, not CorrectHealth or its employees, is responsible for the facility wheelchairs. See Robinson v. Doe, Civ. Action No. 19-9915, 2019 WL 6879665, at *7 (E.D. La. Nov. 25, 2019), adopted, 2019 WL 6877653 (E.D. La. Dec. 17, 2019).

15

brakes posed a significant risk of substantial harm to him). In any event, this claim would appear to sound more in negligence, and, again, "negligence … is not actionable under § 1983." Gibbs v. Grimmette, 254 F.3d 545, 550 (5th Cir. 2001).

### f. Unspecified Conduct

Lastly, as noted, plaintiff also broadly alleges that Logsdon "deprived [him] of his constitutional right to adequate medical care" and "failed to take the appropriate action and necessary measures to protect and preserve [his] health and safety." To the extent that plaintiff intended those sweeping, unadorned, and conclusory allegations as separate causes of action, they do not suffice to state a claim. See, e.g., Iqbal, 556 U.S. at 678 ("A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." (citation, quotation marks, and brackets omitted)).

### 2. ADA/Rehabilitation Act Claims

Plaintiff's complaint also names Logsdon as a defendant with respect to his ADA and Rehabilitation Act claims;[27] however, again, the instant motion discusses only his § 1983 claims. Because the instant motion does not address the ADA and Rehabilitation Act Claims, **no recommendations regarding those claims are made herein.**

### RECOMMENDATION

It is therefore **RECOMMENDED** that the original motion to dismiss filed by defendant Logsdon, Rec. Doc. 43, be **DENIED AS MOOT** in light of the Amended and Superseding Complaint.

---

[27] See Rec. Doc. 92, pp. 12-13.

It is **FURTHER RECOMMENDED** that the subsequent motion filed by Logsdon and CorrectHealth, Rec. Doc. 95, be **GRANTED** and that plaintiff's federal constitutional claims brought pursuant to 42 U.S.C. § 1983 be **DISMISSED WITH PREJUDICE**.  However, that recommendation does **not** encompass the ADA and Rehabilitation Act claims asserted against Logsdon and CorrectHealth, because the motion does not address or otherwise seek dismissal of those claims.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  28 U.S.C. § 636(b)(1); Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this   13th   day of August, 2021.

                                               **JANIS VAN MEERVELD**
                                               **UNITED STATES MAGISTRATE JUDGE**