UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

CHRISTOPHER B. MONTGOMERY                         CIVIL ACTION

VERSUS                                            NO. 20-756

ANNETTE LOGSDON, R.N., ET AL.                     SECTION: "R"(1)

REPORT AND RECOMMENDATION

Plaintiff, Christopher B. Montgomery, a paraplegic inmate, filed this civil action alleging that his rights were violated while he was incarcerated at the Plaquemines Parish Detention Center.[1] He asserted claims pursuant to 42 U.S.C. § 1983, the Americans with Disabilities Act ("ADA"), and Section 504 of the Rehabilitation Act ("RA"). This Report and Recommendation addresses only the pending motion to dismiss filed by Annette Logsdon ("Logsdon") and her employer, CorrectHealth Plaquemines, LLC ("CorrectHealth").[2]

The federal constitutional claims plaintiff asserted against Logsdon and CorrectHealth pursuant to 42 U.S.C. § 1983 were previously dismissed.[3] Logsdon and CorrectHealth now move to dismiss plaintiff's remaining claims against them, which were asserted pursuant to the ADA and the RA.[4] Plaintiff opposes that motion.[5]

---

[1] Plaintiff is no longer incarcerated at that facility; he is currently incarcerated at the Medical Center for Federal Prisons in Springfield, Missouri.
[2] The remaining defendants have neither joined in the motion nor filed separate motions of their own. Therefore, the claims against the remaining defendants are not addressed herein.
[3] Rec. Docs. 104 and 108; Montgomery v. Logsdon, Civ. Action No. 20-756, 2021 WL 4138361 (E.D. La. Aug. 13, 2021), adopted, 2021 WL 4133552 (E.D. La. Sept. 10, 2021).
[4] Rec. Doc. 113.
[5] Rec. Doc. 122.

## II. Plaintiff's Allegations

In his Amended and Superseding Complaint, plaintiff made the following allegations against Logsdon, whom he identifies as "an R.N. for CorrectHealth Plaquemines, LLC"[6]:

10.) Defendant, Annette Logsdon, refused plaintiff of his prescribed medication.

11.) Defendant, Annette Logsdon, failed to obtain plaintiff a wound VAC prescribed and recommended by wound care specialist at UMC. Also approved by United States Marshal Service.

12.) Defendant, Annette Logsdon, R.N., failed and refused to order protein supplements (Ensure) prescribed and recommended by wound care specialist at UMC to help plaintiff's wound heal.

13.) Defendant, Annette Logsdon, R.N., routinely failed to get plaintiff to his wound care appointments.

14.) Defendant, Annette Logdson, R.N., failed to get plaintiff seen by a doctor or specialist concerning his extreme constipation and bleeding out of the rectum constantly causing extreme pain and discomfort going on since 2019.

15.) Defendant Annette Logsdon, R.N., alters medical records of the plaintiff's.

16.) Defendant, Annette Logsdon, R.N., refused to do plaintiff's wound care.

17.) Defendant, Annette Logsdon, R.N., deprived Mr. Montgomery of his constitutional right to adequate medical care.

18.) Defendant, Annette Logsdon, failed to take the appropriate action and necessary measures to protect and preserve plaintiff's health and safety.

19.) Defendant, Annette Logsdon, failed to carry out wound care specialist orders/or recommendations.

20.) Defendant, Annette Logsdon, refused to fix broken brakes on plaintiff's wheelchair.[7]

---

[6] Rec. Doc. 92, p. 3.
[7] Id. at pp. 4-5.

Plaintiff also made the following allegations against CorrectHealth in his Amended and Superseding Complaint:

> 29.)   Defendant, CorrectHealth Plaquemines, failed and refused to have plaintiff seen by a doctor or specialist for his extreme constipation and bleeding out the rectum constantly causing unbearable stomach pain, even though plaintiff has been complaining since 2019 of this problem.
>
> 30.)   Defendant, CorrectHealth Plaquemines, refused and failed to follow wound care specialist orders, or recommendations and place plaintiff on wound VAC and protein supplements (Ensure) to help plaintiff's wound heal.
>
> 31.)   Defendant, CorrectHealth Plaquemines, denied plaintiff of his prescribed medication multiple times by plaintiff moving too slow getting out of bed.
>
> 32.)   Defendant, CorrectHealth Plaquemines, failed and denied plaintiff of wound care.
>
> 33.)   Defendant, CorrectHealth Plaquemines, denied Mr. Montgomery of his Constitutional Right to adequate medical care.
>
> 34.)   Defendant, CorrectHealth Plaquemines, failed to take the appropriate action and necessary measures to protect and preserve plaintiff's health and safety.[8]

### B.  Plaintiff's ADA and RA Claims

Based on the foregoing allegations, Count III of plaintiff's Amended Complaint asserts "[v]iolations of the Americans with Disabilities Act and Section 504 of the Rehabilitation Act by discriminating against and failing to accommodate a disability."[9]  More specifically, plaintiff claims:  "The failure to respond to Mr. Montgomery's worsening health requests for proper working air-loss mattress and denial of a wound VAC and protein supplements all constitute a failure to provide appropriate accommodations to a paraplegic individual."[10]

---

[8] Id. at pp. 6-7.
[9] Id. at p. 12.
[10] Id. at pp. 12-13.

The ADA and the RA are anti-discrimination statutes which provide certain protections to qualified individuals with disabilities.[11]  Relevant here, Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.  Similarly, the RA provides that "[n]o otherwise qualified individual with a disability in the United States … shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance …." 29 U.S.C. § 794 (a).  Although the two acts are not identical, the same legal standards apply – and the same remedies are available – under both the ADA and the RA. Kemp v. Holder, 610 F.3d 231, 234 (5th Cir. 2010).  Therefore, "[j]urisprudence interpreting either section is applicable to both."  Hainze v. Richards, 207 F.3d 795, 799 (5th Cir. 2000).  As a result, courts typically "treat [such] claims coextensively and analyze them together as though they were a single claim." Arce v. Louisiana, 226 F. Supp. 3d 643, 649 (E.D. La. 2016).

Here, the defendants first argue that the ADA and RA claims asserted against Logsdon fail because those acts impose liability only on entities, **not individuals**.  That is correct. See, e.g., Nottingham v. Richardson, 499 F. App'x 368, 376 n.6 (5th Cir. 2012); Sutherland v. Akin, Civ. Action No. 4:19-cv-216, 2021 WL 462103, at *10 (N.D. Tex. Feb. 9, 2021) ("Although the ADA authorizes claims against a 'public entity,' it does not authorize individual liability.  Likewise, a plaintiff cannot sue an individual under the RA and cannot utilize § 1983 as a vehicle to establish individual liability." (citation omitted)); Perez v. Sheriff of Tangipahoa Parish, Civ. Action No.

---

[11] The defendants apparently do not dispute that plaintiff is a qualified individual with a disability under the acts.

10-2073, 2011 WL 1226482, at *11 (E.D. La. Feb. 28, 2011), adopted, 2011 WL 1212940 (E.D. La. Mar. 28, 2011); Hebert v. Williams, Civ. Action No. 10-0014, 2010 WL 4923982, at *3 (E.D. La. Nov. 29, 2010). Therefore, the ADA and RA claims against Logsdon in her individual capacity should be dismissed on that basis.[12]

As to the ADA and RA claims against CorrectHealth, the defendants argue that those claims fail because they challenge the adequacy of plaintiff's medical care and are premised on the same allegations as his previously dismissed § 1983 claims. The undersigned agrees. In fact, in his opposition to the motion to dismiss, plaintiff candidly acknowledges that he is bringing his ADA and RA claims "due to the insufficient and unprofessional **medical neglect** the plaintiff received while in the hands and custody of the defendants while detained at the Plaquemines Parish Detention Center."[13] But a plaintiff is not allowed to repackage what are essentially medical care claims as ADA and RA claims. See Walls v. Texas Department of Criminal Justice, 270 F. App'x 358, 359 (5th Cir. 2008) (noting that a claim which "is simply a restatement of [a § 1983] denial-of-medical-care claim" is "not properly brought under the ADA"; "The ADA does not set out a standard of care for medical treatment."); Hale v. Abangan, Civil Action No. 3:15-cv-170, 2018 WL 1053520, at *3 (S.D. Miss. Jan. 26, 2018) ("A claim is not proper under the ADA if it is simply

---

[12] As explained in the prior Report and Recommendation, any claims against Logsdon in her **official** capacity are actually against her employer, CorrectHealth. Rec. Docs. 104 and 108; Montgomery v. Logsdon, Civ. Action No. 20-756, 2021 WL 4138361, at *5 n.17 (E.D. La. Aug. 13, 2021), adopted, 2021 WL 4133552 (E.D. La. Sept. 10, 2021). Here, however, plaintiff has separately named CorrectHealth as a defendant with respect to his ADA and RA claims. Therefore, any such claims also asserted against Logsdon in her official capacity would be duplicative of those asserted against CorrectHealth and should be dismissed on that basis. See, e.g., Dews v. Link, Civ. Action No. 18-4285, 2021 WL 2223795, at *3 (E.D. Pa. June 2, 2021) ("Even though individuals cannot be sued in their individual capacities for money damages under Title II of the ADA or the Rehabilitation Act, they may be sued in their official capacities. But, where the plaintiff simultaneously sues the state entity that employs the individual defendants, the claims against the individuals may be dismissed as duplicative of the claims against the state. For example, courts may dismiss, as duplicative, Title II ADA claims brought against individuals in their official capacities where there are identical claims against their employer." (footnote and citation omitted)).

[13] Rec. Doc. 122, p. 1 (emphasis added).

a restatement of a claim for the denial of medical care."), adopted, 2018 WL 1041691 (S.D. Miss. Feb. 23, 2018).  This holds true because "[t]he ADA is not violated by a prison's simply failing to attend to the medical needs of its disabled prisoners." Nottingham, 499 F. App'x at 377  (quotation marks omitted)); see also Cadena v. El Paso County, 946 F.3d 717, 726 (5th Cir. 2020) ("[T]he ADA does not typically provide a remedy for negligent medical treatment."); Whetstone v. Hall, No. 4:17CV158, 2018 WL 1022586, at *2 (N.D. Miss. Feb. 22, 2018) ("The ADA and RA exist to protect individuals from being discriminated against because they have disabilities; **they do not exist to challenge a person's treatment for a disability**." (emphasis added)).

Further, it must be noted that, as the defendants also argue, plaintiff's claims additionally fail for another reason:  they simply are not **disability-based** discrimination.  The defendants opine that plaintiff "fails to state a claim because there are no facts suggesting that the alleged discrimination was based on Plaintiff's disability.  Nowhere in the Amended and Superseding Complaint does Plaintiff allege that he was discriminated against because of his paraplegia."[14] The defendants are correct on that point as well.  "To make out a *prima facie* case under Title II or the Rehabilitation Act, a plaintiff must show '(1) that he is a qualified individual within the meaning of the ADA; (2) that he is being excluded from participation in, or being denied benefits of, services, programs, or activities for which the public entity is responsible, or is otherwise being discriminated against by the public entity; and (3) that such exclusion, denial of benefits, or discrimination is **by reason of his disability**.'" Cadena, 946 F.3d at 723 (emphasis added; quoting Melton v. Dallas Area Rapid Transit, 391 F.3d 669, 671-72 (5th Cir. 2004)).  As the defendants

---

[14] Rec. Doc. 113-1, p. 4.

6

accurately note, there simply is no indication that plaintiff was treated differently **because** of his disability.

## RECOMMENDATION

It is therefore **RECOMMENDED** that the motion to dismiss filed by Annette Logsdon and CorrectHealth Plaquemines, LLC, Rec. Doc. 113, be **GRANTED** and that the ADA and RA claims asserted against those defendants be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  28 U.S.C. § 636(b)(1); Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this 18th day of January, 2022.

_____
**JANIS VAN MEERVELD**
**UNITED STATES MAGISTRATE JUDGE**