UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

CHRISTOPHER B. MONTGOMERY                    CIVIL ACTION

VERSUS                                              NO. 20-756

ANNETTE LOGSDON, ET AL.                    SECTION "R" (1)


## ORDER AND REASONS


Before the Court is defendants Gerald Turlich, Denise Narcisse, Lenny Jourdan, and Lisa Ancalade's motion for summary judgment.[1] Plaintiff Christopher B. Montgomery opposes defendants' motion.[2] For the following reasons, the Court grants defendants' motion.


## I.    BACKGROUND

This case arises out of defendants' alleged failure to provide adequate medical care to plaintiff, a paraplegic inmate currently incarcerated at the Medical Center for Federal Prisoners in Springfield, Missouri. Plaintiff alleges that while he was a pre-trial detainee at the Plaquemines Parish Detention Center, defendants failed to provide him with a handicap

---

[1]    R. Doc. 157.
[2]    R. Doc. 158.

accessible cell, and that they failed to procure medical equipment he needed, including a working air-loss mattress, a new wheelchair, a wound vacuum-assisted closure (a "wound VAC"), and protein supplements.[3]  He also asserts that defendants temporarily transferred him to a facility in Belle Chasse, Louisiana, which did not have a handicap accessible bathroom or shower. He alleges that while he was there, he was unable to access toilets or showers for five days.[4]  Finally, he alleges that his complaints about his constipation and his need for better wound care were ignored.[5]

Plaintiff filed a complaint against Egan Medical Staffing ("Egan"); CorrectHealth Plaquemines, LLC ("CorrectHealth"); Annette Logsdon, R.N., an employee of CorrectHealth; Gerald Turlich, Sheriff of Plaquemines Parish; Lisa Ancalade, the liaison between Plaquemines Parish Sheriff's Office and the medical providers[6]; Denise Narcisse, Warden of Plaquemines Parish; and Lenny Jourdan.[7]  In his complaint, plaintiff brings three claims: (1) that defendants acted with deliberate indifference of his medical needs in

---

[3]     R. Doc. 92 ¶¶ 21, 36, 41.

[4]     *Id.* ¶ 38.

[5]     *Id.* ¶¶ 42, 46.

[6]     R. Doc. 158-1 at 26.

[7]     The record does not indicate Lenny Jourdan's position with the jail, but the Plaquemines Parish Sheriff's Office website states that he currently serves as the Director of Federal Inmates & Transportation. *See* www.ppso.net/command-staff.

violation of the Eighth and Fourteenth Amendments; (2) that Turlich[8] failed to supervise and train jail staff and ratified policies that caused violations of inmates' constitutional rights; and (3) that defendants discriminated against him in violation of the Americans with Disabilities Act (the "ADA") and the Rehabilitation Act (the "RA").

Turlich, Jourdon, Ancalade, and Narcisse now move for summary judgment.[9]  In their motion, they contend that there is no evidence that defendants were deliberately indifferent to plaintiff's medical needs, and that even if plaintiff had established a constitutional violation, they are entitled to qualified immunity.[10]  They further contend that plaintiff has failed to establish that Turlich permitted a policy or practice of unconstitutional conduct.[11]  Finally, defendants assert that plaintiff has failed to establish a claim for discrimination in violation of the ADA or the RA.[12]  Plaintiff opposes defendants' motion.[13]

---

[8]     His complaint also lists Narcisse for this claim, but in his opposition to defendants' motion for summary judgment, plaintiff refers only to Turlich.

[9]     The claims against Annette Logsdon, CorrectHealth, and Egan have already been dismissed by earlier orders of the Court.  R. Docs. 108, 132 & 143.

[10]    R. Doc. 157-1 at 11-15.

[11]    *Id.* at 17-20.

[12]    *Id.* at 20-22.

[13]    R. Doc. 158.

The Court considers the parties' arguments below.

## II.   LEGAL STANDARD

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam). "When assessing whether a dispute to any material fact exists, [the Court] consider[s] all of the evidence in the record but refrain[s] from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins.*, 530 F.3d 395, 398-99 (5th Cir. 2008). All reasonable inferences are drawn in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment." *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985) (quoting 10A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2738 (2d ed. 1983)); *see also Little*, 37 F.3d at 1075. "No genuine dispute of fact exists if the record taken as a whole could not lead a rational trier of

fact to find for the nonmoving party." *EEOC v. Simbaki, Ltd.*, 767 F.3d 475, 481 (5th Cir. 2014).

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'" *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1264-65 (5th Cir. 1991) (quoting *Golden Rule Ins. v. Lease*, 755 F. Supp. 948, 951 (D. Colo. 1991)). "[T]he nonmoving party can defeat the motion" by either countering with evidence sufficient to demonstrate the "existence of a genuine dispute of material fact," or by "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." *Id.* at 1265.

If, as here, the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See id.* at 324. The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue for

resolution. *See, e.g., id.*; *Little*, 37 F.3d at 1075 ("Rule 56 'mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" (quoting *Celotex*, 477 U.S. at 322)).

## III.   DISCUSSION

### A.   Deliberate Indifference Claim

Plaintiff brings a Section 1983 claim against defendants for their alleged deliberate indifference to his medical needs during his time in the custody of the Plaquemines Parish Detention Center. Section 1983 provides a cause of action to plaintiffs whose federal rights are violated under color of state law. 42 U.S.C. § 1983; *Doe v. Dallas Indep. Sch. Dist.*, 153 F.3d 211, 215 (5th Cir. 1998). To state a claim under section 1983, a plaintiff must first show a violation of the Constitution or of federal law, and then show that the violation was committed by someone acting "under color of state law." *Id.*

Defendants contend that they are entitled to qualified immunity for plaintiff's deliberate indifference claim. As public officials, defendants are entitled to qualified immunity for plaintiff's Section 1983 claim, unless their conduct "violate[d] a clearly established constitutional right." *Harris v.*

*Serpas*, 745 F.3d 767, 771 (5th Cir. 2014).  Courts apply a two-step analysis to determine whether a defendant is entitled to summary judgment on the basis of qualified immunity.  *Id.* at 772.  Under this analysis, officers are entitled to qualified immunity, unless "(1) [plaintiffs] have adduced sufficient evidence to raise a genuine issue of material fact suggesting their conduct violated an actual constitutional right, and (2) the officers' actions were objectively unreasonable in light of clearly established law at the time of the conduct in question."  *Newman v. Guedry*, 703 F.3d 757, 761 (5th Cir. 2012) (internal quotation omitted).  Thus, even if the evidence supports a conclusion that plaintiff's rights were violated, qualified immunity may still be invoked, unless "the government official violated clearly established statutory or constitutional rights of which a reasonable person would have known."  *Manis v. Lawson*, 585 F.3d 839, 845 (5th Cir. 2009).  This two-prong approach ensures that "[q]ualified immunity shields from civil liability all but the plainly incompetent or those who knowingly violate the law."  *Id.* (internal quotations omitted).

Because the evidence does not support a conclusion that plaintiff's Fourteenth Amendment[14] rights were violated, the Court need not reach the

---

[14]   Plaintiff contends that defendants failed to provide adequate medical care in violation of both the Eighth and the Fourteenth Amendments. Because the challenged conduct occurred while plaintiff was a pre-

issue of defendants' entitlement to qualified immunity.  The Fourteenth Amendment "guarantees pretrial detainees a right not to have their serious medical needs met with deliberate indifference on the part of the confining officials."  *Dyer v. Houston*, 964 F.3d 374, 380 (5th Cir. 2020) (internal quotation marks omitted).  To succeed on a deliberate-indifference claim, "plaintiffs must show (1) the official was aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and (2) the official actually drew that inference."  *Id.* (internal quotation marks omitted).[15]  "Deliberate indifference is an extremely high standard to meet." *Id.*  Deliberate indifference "cannot be inferred merely from a negligent or even a grossly negligent response to a substantial risk of serious harm."  *Id.*

Plaintiff contends that defendants acted with deliberate indifference to his medical needs in several ways.  He argues that he was not given a handicap accessible cell, and that he was temporarily transferred to a facility in Belle Chasse, Louisiana, which had no handicap accessible bathroom.

---

trial detainee, *see* R. Doc. 157-1 at 11, the Court will analyze his claim under the Fourteenth, rather than the Eighth, Amendment.  *See Dyer*, 964 F.3d at 380.

[15] Some courts have also required plaintiffs to demonstrate that the official "subjectively intended that harm occur."  *See, e.g.*, *Garza v. City of Donna*, 922 F.3d 626, 635 n.5 (5th Cir. 2019); *Tamez v. Manthey*, 589 F.3d 764, 770 (5th Cir. 2009).  The Fifth Circuit recently clarified that the addition of this element "depart[s] from controlling Supreme Court and Fifth Circuit law."  *Dyer*, 964 F.3d at 380.

Next, plaintiff contends that defendants did not properly address his multiple complaints of constipation and rectal bleeding, nor did they provide adequate wound care.  Finally, plaintiff asserts that defendants failed to procure equipment and supplies that he needed, including a working air-loss mattress, a wound VAC, a new wheelchair, and protein supplements.

Plaintiff has identified no evidence that substantiates his claim that he was not provided a handicap accessible cell.  Indeed, the only evidence plaintiff has put forth on this issue is defendants' responses to plaintiff's requests for admission, in which defendants denied that plaintiff's cell "wasn't handicap equipped."[16]  As for his claims regarding the facility in Belle Chasse, Louisiana, defendants concede that plaintiff was transferred there to evacuate for hurricanes on two occasions.[17]  The first evacuation was for two nights from August 23, 2020 until August 25, 2020, and the second evacuation was for one night from September 14, 2020 until September 15, 2020.[18]  Plaintiff does not provide any evidence to support his allegation that the Belle Chasse facility had no handicap accessible bathrooms or that he

---

[16]    R. Doc. 158-1 at 29.

[17]    R. Doc. 157-4 at 5-6.

[18]    *Id.*

lacked access to a shower while he was there.[19]   Plaintiff has thus failed to establish a genuine dispute of material fact as to his deliberate indifference claim premised on these arguments.

Plaintiff has also failed to identify a genuine dispute of material fact regarding his claim that defendants acted with deliberate indifference in response to plaintiff's complaints of constipation and his need for wound care.  The records plaintiff provides show that virtually all of his complaints regarding these issues were promptly responded to.[20]  When plaintiff raised issues regarding his constipation, defendants gave plaintiff the medications he requested or scheduled appointments for him to see a health care provider.[21]  Indeed, in their responses to plaintiff's requests for admission, defendants indicate that most of plaintiff's complaints regarding stomach pain and constipation were responded to within one day or less.[22]  Although the records indicate that some of the medical complaints plaintiff filed with the prison expressly requested a colonoscopy,[23] "[t]he decision whether to provide additional medical treatment is a classic example of a matter of

---

[19]   Plaintiff also contends, for the first time in his opposition brief, that he was exposed to asbestos at the Belle Chasse facility.  R. Doc. 158 at 16. He identifies no evidence in support of that claim.

[20]   R. Doc. 158-1 at 14-16, 18.

[21]   *Id.* at 14-16.

[22]   *Id.* at 12.

[23]   *Id.* at 18.

medical judgment," which fails to give rise to a deliberate-indifference claim. *Dyer*, 964 F.3d at 381; *see also Gros v. Lafourche Parish*, No. 21-1783, 2022 WL 509357, at *6 (E.D. La. Jan. 12, 2022) ("An inmate's . . . mere disagreement with the speed, quality, or extent of medical treatment received, . . . does not give rise to a § 1983 claim.").

The records also demonstrate that plaintiff received frequent medical attention for his wound care, including regular trips to the hospital for this issue.[24] The evidence of defendants' prompt responses to plaintiff's medical complaints and the continuous care he received indicates that defendants did not meet plaintiff's medical needs with deliberate indifference. *See Stewart v. Murphy*, 174 F.3d 530, 535 (5th Cir. 1999) (affirming summary judgment as to plaintiff's deliberate-indifference claim in light of defendants' active treatment of plaintiff while he was incarcerated); *Varnado v. Lynaugh*, 920 F.3d 320, 321 (5th Cir. 1991) (prison medical records demonstrating that plaintiff's medical problems were addressed "numerous times" undermined plaintiff's claim that prison officials acted with deliberate indifference to his medical needs); *Norton v. Dimazana*, 122 F.3d 286, 291-92 (5th Cir. 1997) (finding plaintiff's "complaints about the treatments he has received" do not amount of deliberate indifference in light of "[t]he medical records [that]

---

[24]    *Id.* at 5, R. Doc. 157-4 at 1-4.

indicate that [plaintiff] was afforded extensive medical care by prison officials"). In light of the "extensive evidence in the record that prison officials afforded [plaintiff] a great deal of care and attention," *id.*, the Court thus finds that defendants are entitled to summary judgment to the extent his deliberate-indifference claim is premised on defendants' failure to respond to his complaints regarding his constipation and wound-care needs.

The same is true of plaintiff's claims that defendants failed to procure equipment and supplies. As to plaintiff's claim regarding the air-loss mattress, the evidence indicates that plaintiff initially used an air-loss mattress that was ordered for a previous inmate based on that inmate's medical needs.[25] Upon plaintiff's reports of issues with that air-loss mattress, he was given a regular mattress to use. When plaintiff's doctor recommended that he be given an air-loss mattress, prison staff procured one within a few weeks.[26] Prison staff also procured a new wheelchair for defendant in March 2020, roughly nine months after it was first requested.[27] The Fifth Circuit has made clear that "[a] delay in providing medical care is not a violation of [the Fourteenth Amendment] unless it results in

---

[25] R. Doc. 158-1 at 3.

[26] *Id.* at 8, 23. Later that year, plaintiff complained about the new air-loss mattress not working properly. Defendant Ancalade promptly resolved plaintiff's complaint. R. Doc. 157-5.

[27] R. Doc. 158-1 at 9.

substantial harm." *Lacy v. Shaw*, 357 F. App'x 607, 608 (5th Cir. 2009).
Plaintiff has identified no evidence showing that the prison staff's delay in
procuring an air-loss mattress and a new wheelchair resulted in "substantial
harm."

The record is less clear as to the other equipment and supplies.
Although a doctor recommended that plaintiff receive a wound VAC and the
U.S. Marshals approved the request, defendants' responses to plaintiff's
requests for admission indicate that plaintiff did not receive one.[28]  Further,
the evidence does not indicate whether plaintiff received protein
supplements.  Even assuming that defendants were the parties responsible
for timely procuring these items, a jail's medical department is not
necessarily obligated to implement all aspects of care prescribed or
recommended by an outside provider.  *See Clifford v. Doe*, 303 F. App'x 174,
175 (5th Cir. 2008) ("[T]he [jail] medical staff's failure to follow [an outside
doctor's] recommended treatment plan did not constitute deliberate
indifference to his medical needs.").  Further, plaintiff has identified no facts
indicating that this failure reflects a "a negligent or even a grossly negligent
response to a substantial risk of serious harm," *Dyer*, 964 F.3d at 380, much
less an "unnecessary and wanton infliction of pain repugnant to the

---

[28]   R. Doc. 158-1 at 23, 30.

conscience of mankind," *McCormick v. Stalder*, 105 F.3d 1059, 1061 (5th Cir. 1997).

In sum, plaintiff has failed to identify any genuine disputes of material fact as to whether defendants were deliberately indifferent to plaintiff's medical needs. Although his medical care may not have been "the best that money could buy," the prison staff "was responsive to [plaintiff's] medical needs," and plaintiff has "made no showing that any lapses in medical care amounted to constitutional violations." *Cadena v. El Paso Cnty.*, 946 F.3d 717, 729 (5th Cir. 2020). Defendants are thus entitled to summary judgment on plaintiff's section 1983 claim.

### B. *Monell* Claim

Plaintiff also brings a claim against Sheriff Turlich in his official capacity. "Official capacity suits generally represent another way of pleading an action against an entity of which an officer is an agent." *Burge v. Par. of St. Tammany*, 187 F.3d 452, 466 (5th Cir. 1999). Thus, plaintiff's official-capacity claims against Sheriff Turlich are actually claims against the Plaquemines Parish Sheriff's Office itself. *See Bean v. Pittman*, No. 14-2210, 2015 WL 350284, at *2 (E.D. La. Jan. 26, 2015).

Because the Sheriff's Office is a municipal entity, plaintiff's section 1983 claim against Sheriff Turlich must satisfy the requirements outlined in *Monell v. Department of Social Services*, 436 U.S. 658 (1978). Under *Monell*, to establish a section 1983 claim against a municipality, a plaintiff must demonstrate (1) an official policy or custom, of which (2) a policymaker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose "moving force" is that policy or custom. *Valle v. City of Houston*, 613 F.3d 536, 541-42 (5th Cir. 2010).

Plaintiff contends that Sheriff Turlich failed to supervise and train prison staff, and that he condoned "written and unwritten policies, customs, patterns, and practices" that resulted in the violation of inmates' constitutional rights, including a policy of ignoring detainees' medical needs.[29] But plaintiff's "inadequate supervision, failure to train, and policy, practice, or custom claims fail without an underlying constitutional violation." *Whitley v. Hanna*, 726 F.3d 631, 648-49 (5th Cir. 2013); *see also Bustos v. Martini Club, Inc.*, 599 F.3d 458, 467 (5th Cir. 2010) ("Because [plaintiff] has alleged no constitutional injury attributable to the Officers, [plaintiff] has failed to state a claim that a City policy was the moving force

---

[29]   R. Doc. 158 at 11.

behind a violation of his constitutional rights.").  Accordingly, Sheriff Turlich is entitled to summary judgment as to plaintiff's *Monell* claim.

### C.    Discrimination Claims

Finally, plaintiff contends that defendants failed to accommodate his disability in violation of the ADA and the RA.  Plaintiff's complaint purports to bring these claims against defendants in their individual and official capacities, but "individual defendants cannot be held personally liable for violations of Title II of the ADA."  *Douglas v. Gusman*, 567 F. Supp. 2d 877, 888 (E.D. La. 2008).  The same is true for the RA.  *Lollar v. Baker*, 196 F.3d 603, 609 (5th Cir. 1999).  Accordingly, to the extent plaintiff seeks to hold defendants liable in their individual capacities for alleged violations of the ADA or the RA, such claims are dismissed.

Section 504 of the RA provides that "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subject to discrimination under any program or activity receiving Federal financial assistance."  29 U.S.C. § 794(a).  "Building on the [RA's] protections, Congress passed the [ADA] in 1990 to provide a clear and comprehensive national mandate for the elimination of discrimination

16

against individuals with disabilities." *Smith v. Harris Cnty., Tex.*, 956 F.3d 311, 316-17 (5th Cir. 2020). "In essence, Title II of the ADA extends Section 504 of the [RA] such that it applies to all public entities while simultaneously weakening its causation requirement." *Id.* The ADA defines public entities to include local governments and their instrumentalities, including county jails. *Id.* at 317. "The close relationship between Section 504 of the [RA] and Title II of the ADA means that precedents interpreting either law generally apply to both." *Id.*

Plaintiff contends that defendants failed to accommodate his disability in violation of the RA and the ADA by failing to (1) "respond to [plaintiff's worsening health" and (2) procure a proper air-loss mattress, a wound VAC, and protein supplements.[30] As a threshold matter, ADA and RA claims that are "simply a restatement of [a § 1983] denial-of-medical-care claims" are "not properly brought under the ADA," as the ADA "does not set out a standard of care for medical treatment." *Walls v. Texas Dep't of Criminal Justice*, 270 F. App'x 358, 359 (5th Cir. 2008); *Nottingham v. Richardson*, 499 F. App'x 368, 376 n.6 (5th Cir. 2012) ("The ADA is not violated by a prison's simply failing to attend to the medical needs of its disabled prisoners."); *Cadena*, 946 F.3d at 726 ("The ADA does not typically provide

---

[30]    R. Doc. 92 at 13.

a remedy for negligent medical treatment.").  Plaintiff's claim that defendants failed to respond to his health issues and to procure a working air-loss mattress, a wound VAC, and protein supplements is "simply a restatement of" his section 1983 claim and is thus dismissed.[31]

In his opposition brief, plaintiff contends that defendants failed to timely replace his wheelchair.  Notably, plaintiff does not allege in his complaint that defendants' failure to timely procure a new wheelchair violated the ADA or the RA, nor does he allege that any of the defendants still remaining in this action were responsible for procuring a new wheelchair.[32] But, even if plaintiff had alleged that defendants' failure to timely procure a new wheelchair violated the ADA, plaintiff's claim would not survive summary judgment.

"To succeed on a failure-to-accommodate claim, a plaintiff must prove (1) he is a qualified individual with a disability; (2) the disability and its consequential limitations were known by the covered entity; and (3) the entity failed to make reasonable accommodations." *Smith,* 956 F.3d. at 317 (quoting *Ball v. LeBlanc*, 792 F.3d 584, 596 n.9 (5th Cir. 2015)).  Plaintiffs

---

[31]   R. Doc. 125 (dismissing plaintiff's RA and ADA claims against CorrectHealth related to the alleged medical neglect plaintiff experienced at the jail as duplicative of his § 1983 claims).

[32]   R. Doc. 92 ¶¶ 35-50.

ordinarily satisfy the knowledge element "by showing that they identified their disabilities as well as the resulting limitations to a public entity or its employees and requested an accommodation in direct and specific terms." *Id.* The ADA and RA require accommodations that are necessary to provide "meaningful access to the benefit[s]" provided by the public entity. *Alexander v. Choate*, 469 U.S. 287, 301 (1985). "[M]obility aids have been characterized by the Supreme Court . . . as disability accommodations. *Cadena*, 946 F.3d at 726.

As discussed in Section II.A, *supra*, the evidence shows that a request was put in for plaintiff to receive a new wheelchair, and that several months later, he fell out of his wheelchair.[33] He received a new wheelchair in March 2020, roughly three months after his fall. "The ADA provides for reasonable accommodation, not preferred accommodation." *Arce v. Louisiana*, 226 F. Supp. 3d 643, 651 (E.D. La. 2016). Accordingly, the "accommodation of the inmate's disability need not be ideal; instead, it need only be reasonable and effective." *Id.* Further, "A correctional facility is afforded deference in its determination of an appropriate accommodation." *Id.* An accommodation is "reasonable" when it is sufficient to provide a disabled person "meaningful access to the benefit" offered by a public entity. *Alexander*, 469 U.S. at 301.

---

[33]    R. Doc. 158-1 at 9-10.

Plaintiff has identified no evidence that the condition of his wheelchair caused him to fall. Further, plaintiff was apparently able to ambulate within the facility using his original wheelchair without incident from the time he was incarcerated in April 2019[34] until his fall in December 2019, an eight-month period. Once he fell, the prison staff ordered a new wheelchair, which he received within three months.[35] Plaintiff has thus failed to establish that the prison staff's failure to replace his wheelchair more quickly denied him "meaningful access the benefit[s]" provided by the jail. *Alexander*, 469 U.S. at 301; *compare Cadena*, 946 F.3d at 725 (denying summary judgment where plaintiff provided evidence that she was denied "meaningful access to the benefit that the [prison] offer[ed]" because defendants knew she needed a wheelchair but forced her to use crutches over her doctor's express orders that she was not "a candidate for crutches" and despite her inability to "ambulate within the facility on crutches"). Defendants are thus entitled to summary judgment as to plaintiff's claims under the ADA and RA.

## IV.  CONCLUSION

---

34   R. Doc. 158-1 at 21.

35   *Id.* at 25. Nor is there any evidence that plaintiff was unable to ambulate within the facility during the three months between his fall and his receipt of the new wheelchair.

For the foregoing reasons, the Court hereby GRANTS defendants'
motion for summary judgment.  Plaintiff's complaint is DISMISSED WITH
PREJUDICE.


New Orleans, Louisiana, this __12th__ day of April, 2023.

_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE